UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

R<small>ON</small> B<small>RYANT</small>,                              )
    *Plaintiff*,                                  )
                                                )
    *vs*.                                         )    1:10-cv-00197-JMS-DML
                                                )
M<small>ICHAEL</small> J. A<small>STRUE</small>, Commissioner of Social )
Security,                                       )
    *Defendant*.                                  )

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff, Ron Bryant, applied for supplemental security income ("SSI") through the Social Security Administration in October 2006. [R. 9, dkt. 12-2 at 10.][1] After a series of administrative proceedings, including a hearing in August 2009 before Administrative Law Judge ("ALJ") Deborah Arnold, the agency denied his application. He then filed this action under 42 U.S.C. § 405(g), requesting that the Court review that denial.

## I.
### B<small>ACKGROUND</small>

Mr. Bryant applied for benefits claiming that he has been disabled since January 1999, as a result of several conditions: "Knees, hip, shoulder, emphysema, diabetes, [and] back." [R. 124, dkt. 12-6 at 8.] At his hearing, he testified that he can lift ten pounds, can walk a couple hundred yards at a time before losing his breath, can stand for an hour at a time, and must frequently alternate between standing and sitting. [R. 26-27, dkt. 12-2 at 27-28.] Mr. Bryant also testified that the Veterans Administration "believe[s] that [he is] bipolar and [he has] lost many jobs because of it." [R. 28, dkt. 12-2 at 29.]

---

[1] Because the electronically filed transcript was split among multiple attachments, the Court will provide both the "record" citation and the citation to the docket attachment containing the relevant portion of the transcript.

His counsel has been unable to locate a diagnosis of bipolar disorder in the record here, although counsel has identified records showing that he received at least some mental health treatment. In October 2008, intake at the VA provisionally diagnosed Mr. Bryant with "Major Depression, Moderate; Cannabis abuse; R/O Bipolar II Depression." [R. 425, dkt. 12-10 at 3.][2] That diagnosis later became "substance induced mood disorder; cannabis abuse; rule out anxiety disorder." [R. 421, dkt. 12-9 at 61.] The following month, he was prescribed an anti-depressant, although he wanted an anti-anxiety drug. [R. 420, dkt. 12-9 at 60.] He complained about the prescription a few days later, after researching the drug and discovering that it is used to treat depression and not anxiety. [R. 419, dkt. 12-9 at 59.] Thereafter, Mr. Bryant doesn't appear to have requested or received any additional mental health treatment.

In connection with his SSI application, Mr. Bryant received a consultative examination from Dr. Khan in January 2007. [R. 244, dkt. 12-7 at 95.] Dr. Khan found that Mr. Bryant has only mild emphysema, which hasn't required inhalers, oxygen, or hospitalization. [R. 246, dkt. 12-7 at 97.] Dr. Khan also diagnosed shoulder and back pain, the latter of which "appears to have resulted in a permanent deformity of [the] lower back with persistent flexed posture. It appears that the patient needs all the help that he can get." [*Id.*]

On the basis of Dr. Khan's findings, the two state reviewing physicians, Dr. Montoya and Dr. Ruiz, found, among other things, that Mr. Bryant retained the ability to frequently lift ten pounds, to occasionally lift twenty pounds, to stand and walk for six hours in a workday, and to sit for six hours in a workday. [R. 251, 284, dkt. 12-7 at 102, 135.]

A state reviewing psychologist, Dr. Pressner, found no medically determinable mental impairment. [R. 258, dkt. 12-7 at 109.] In making that finding, Dr. Pressner noted that Mr.

---

[2] "R/O" in medical records typically means "rule out." www.jdmd.com/glossary/medabbr.pdf (last visited November 3, 2010).

Bryant "has no allegations, diagnosis, or treatment for mental health. [He] reports wide range of function....[He] reports disability is physical." [R. 270, dkt. 12-7 at 121.] Dr. Shipley reviewed and concurred with the report in May 2007. [R. 283, dkt. 12-7 at 134.]

The ALJ found that Mr. Bryant suffered only two severe impairments: degenerative joint disease and degenerative disc disease. [R. 11, dkt. 12-2 at 12.] She found no severe mental impairments because his "depression and cannabis abuse, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." [R. 12, dkt. 12-2 at 13.] Adopting the physical limitations that Dr. Montoya and Dr. Ruiz had proposed, and relying upon the testimony of a vocational expert, she found that Mr. Bryant could still perform two of his past jobs: as a cashier and as a driver for auto auctions. [R. 14, dkt. 12-2 at 15.] He could also perform a host of other types of jobs in the economy. [R. 14-15, dkt. 12-2 at 15-16.] She also found that, even if she limited him to jobs requiring only superficial contact with others, he could still work as an assembler and as a toll collector, of which Indiana has 2,000 and 230 positions respectively. [R. 15, dkt. 12-2 at 16.]

## II.
### DISCUSSION

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.

2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

>  To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform [his] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).

Here, Mr. Bryant argues that the ALJ erred at Step Two when she concluded that he didn't have a severe mental impairment. At Step Four, he argues that the ALJ wrongly found that he can perform his past work as a cashier and as a driver. Finally, at Step Five, he argues that the ALJ improperly found that he can still perform other work in the national economy.

**A.  The ALJ's Finding of No "Severe" Mental Impairment at Step Two**

When the ALJ found that Mr. Bryant had no severe mental impairments, she relied upon the 2007 opinions of the two state reviewing psychologists. [*See* R. 12, dkt. 12-2 at 13.] Mr. Bryant argues that the ALJ's reliance was misplaced for two reasons. First, in his view, the record reveals many instances "in which Mr. Bryant became overtly angry, hostile and abusive towards VA medical center physicians and staff in the course of his treatment there," evidence which he suggests shows that he has a "mental disorder [that] has a significant impact on his social functioning." [Dkt. 22 at 2.] Second, he was ultimately diagnosed "with a mental disorder by a psychiatrist at the VA Medical Center in October 2008," [dkt. 35 at 1], well after the state

reviewing psychologists opined that he had no severe mental impairment. Thus, he argues that the ALJ clearly erred; she should have found that he had a severe mental impairment too.

Ultimately the Court need not, and will not, decide whether the ALJ erred at Step Two because any error was harmless and cannot form the basis of a remand, *e.g.*, *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (collecting cases establishing that the doctrine of harmless error is "fully applicable" to reviews of disability denials).[3] An ALJ must decide which impairments qualify as "severe" for two reasons. First, to potentially qualify for disability at all, a claimant must have at least one severe impairment. 20 CFR § 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement…we will find that you are not disabled."). Second, the Social Security Administration has determined that some severe impairments are automatically disabling. At Step Three, the ALJ asks whether the claimant has one of those. *Id.* § 404.1520(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). Assuming the analysis at Steps Two and Three don't resolve the disability application, the severity of the claimant's impairments no longer matters. At Steps Four and Five, the ALJ must evaluate the claimant's ability against the claimant's residual functional capacity ("RFC"), which means his ability to work given "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including…medically deter-

---

[3] The Commissioner denies that the ALJ committed any error at all, for several reasons. Among them: The mental disorder that the VA diagnosed—and which Mr. Bryant failed to name in his brief—was "substance induced mood disorder; cannabis abuse." [R. 421, dkt. 12-9 at 61.] By statute, SSI claimants can't obtain benefits if drug use constitutes "a contributing factor material to the Commissioner's determination that the individual is [otherwise] disabled." 42 U.S.C. § 1382c(a)(3)(J). And that statute is, the Commissioner suggests, directly on point here. [Dkt. 38 at 2.] Given that any error at Step Two is harmless, the Court need not and will not decide the merits of the Commissioner's arguments.

minable impairments that are not 'severe.'" 20 CFR § 404.1545(a)(2). Because the ALJ here found that Mr. Bryant had two severe physical impairments and because Mr. Bryant concedes that his allegedly severe mental impairment doesn't qualify as automatically disabling at Step Three, [dkt. 22 at 4], any error that the ALJ made at Step Two by not also finding a "severe" mental impairment was harmless.

### B. The ALJ's Determination that Mr. Bryant Can Perform His Past Work

Mr. Bryant next takes issue with the ALJ's finding that Mr. Bryant can perform his past work both as a driver for car auctions and as a cashier. He makes two, unsuccessful, arguments as to why the record doesn't establish that his physical limitations permit him to perform either job.[4] He also argues that his mental condition prevented him from working as a cashier, an argument that could, at best, establish harmless error.

First, according to Mr. Bryant, the ALJ should have preferred the opinions of Dr. Khan, the consulting examiner, over the opinions of Dr. Montoya and Dr. Ruiz, the state reviewing physicians. Citing Eleventh Circuit case law, Mr. Bryant argues that opinions of non-reviewing physicians cannot constitute "substantial evidence" where the opinions are contrary to those of a reviewing physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("The opinions of nonexamining, reviewing physicians, when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." (quotation and alteration omitted)).

---

[4] In his opening brief, Mr. Bryant also argued that the ALJ's decision contained "factual misstatements" that tainted the RFC finding. [Dkt. 22 at 5.] Mr. Bryant does not, however, address that argument any further in his reply brief; therefore, Mr. Bryant has evidently abandoned it. *See Becker v. Porter County Sheriff's Dep't*, 2009 U.S. Dist. LEXIS 15749 *14 (N.D. Ind. 2009) ("[T]the Plaintiff failed to address his Eighth Amendment claim in his reply, and has thereby abandoned this claim." (citation omitted)). But even if he hadn't, the Court would have found the argument waived for lack of cogent development: Mr. Bryant offers no explanation as to how the ALJ's RFC determination would have differed absent those alleged misstatements.

Mr. Bryant's argument fails because he has, however, been unable to identify any conflict at all. In his reply brief, Mr. Bryant was forced to concede that Dr. Khan didn't opine as to any specific limitations that Mr. Bryant faces—unlike the reviewing physicians who translated Dr. Khan's findings into functional limitations. [Dkt. 35 at 2.] Insofar as Mr. Bryant invites the Court to speculate as to how Dr. Khan's findings might have been applied differently, the Court declines to do so. The Court may not "play doctor" any more than an ALJ can. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

Mr. Bryant's first argument also fails because—even if he had identified a conflict—*Lamb* doesn't reflect the law of this Circuit. Nonexamining physicians can provide substantial evidence so long as their opinions don't "contradict[] reports about underlying facts or offer[] unfounded speculation." *Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir. 1985); *see also Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("Substantial evidence supports the ALJ's decision to give greater weight to the state-agency doctors' opinions than to that of Ketelboeter's treating physician…."). Mr. Bryant makes no claim that the reviewing physicians here engaged in either forbidden activity; therefore, the ALJ could—and did—legitimately rely upon their opinions when determining Mr. Bryant's RFC.

As an alternative to his first argument, Mr. Bryant suggests that statements in Dr. Khan's report—including that Mr. Bryant "needs all the help he can get," [R. 246, dkt. 12-7 at 97]—"lend[] credibility to Mr. Bryant's testimony about the severity of his back complaints, testimony which the ALJ…discounted," [dkt. 35 at 2]. But judicial review of credibility determinations is too deferential for that argument to succeed. The Court cannot find the ALJ's credibility assessment of Mr. Bryant is "patently wrong," especially given that Dr. Montoya and Dr. Ruiz

both concurred that Dr. Khan's report doesn't establish the level of disability that Mr. Bryant claims it does.

Finally, returning to the issue of his mental health, Mr. Bryant contends that his "demonstrated history of hostile and abusive behavior towards others," [dkt. 22 at 5 (emphasis removed)], means that he lacks the RFC to perform any job requiring more than minimal interaction with others, [*see* dkt. 35 at 3]. While Mr. Bryant argues that the restriction prevents him from working as a cashier, he makes no such claim about his past work as a driver. [*See* dkt. 22 at 5-6.] Indeed, the vocational expert affirmatively testified that the restriction would have no effect on his ability to work as a driver. [R. 33, dkt. 12-2 at 34.] Because Mr. Bryant's requested additional restriction doesn't preclude his ability to perform all his past work, any error for not having imposed the restriction is only harmless. 20 C.F.R. § 416.920(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.").

In short, the Court finds no reversible error at Step Four in the disability analysis.

**C. The ALJ's Finding at Step Five that Mr. Bryant Can Perform Other Work in the National Economy**

Because the ALJ didn't err in finding Mr. Bryant "not disabled" at Step Four, the Court will only briefly address Step Five. At most, it too involves only a claim of harmless error. Giving Mr. Bryant the benefit of all his arguments about the extent of his RFC and thereby excluding the assembler position, Mr. Bryant argues that the evidence in the record establishes that he can only work as a toll collector, meaning that he would only qualify for "16,000 jobs in the national economy and a scant 230 jobs in the entire state of Indiana." [Dkt. 35 at 3.] In his view, there simply aren't enough toll collector jobs to support a finding of non-disability at Step Five. *See* 20 CFR § 404.1560(c)(1) ("If we find that your residual functional capacity is not enough to

enable you to do any of your past relevant work, we will…decide if you can adjust to any other work….Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).").

In dictum, the Seventh Circuit has reported—without criticism—that "[a]s few as 174 jobs [in the region] has been held to be significant." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). While not technically binding here, the Court will follow the implicit suggestion that 174 jobs suffices, absent new authority from the Seventh Circuit or the Supreme Court. *Cf. Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980) ("A dictum in a Supreme Court opinion may be brushed aside by the Supreme Court as dictum when the exact question is later presented, but it cannot be treated lightly by inferior federal courts until disavowed by the Supreme Court."). Accordingly, the Court finds that an RFC that permits Mr. Bryant to work as a toll collector permits him to work in a job with sufficient numbers so as to preclude a finding of disability.

### III.
#### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent….Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 2010 U.S. App. LEXIS 2604, *5 (7th Cir. 2010) (per curiam). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Mr. Bryant doesn't qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

11/04/2010

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Sarah E. Heck
ATTORNEY AT LAW
sarah@sarahhecklaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov